UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CONRAD D. COTTINGHAM, JR.,<br>a minor, by his legal and general guardians,<br>Conrad D. Cottingham, Sr. and Tyronza Cottingham,<br><br>      Plaintiff,<br><br>v.<br><br>CITY OF RACINE, RACINE UNIFIED SCHOOL DISTRICT,<br>*et al.*,<br><br>      Defendants. | Case No: 16-CV-1560 |

**RACINE UNIFIED SCHOOL DISTRICT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant, Racine Unified School District ("School District"), by its attorneys, Michael Best & Friedrich LLP, hereby submits this Memorandum in Support of Its Motion for Judgment on the Pleadings, pursuant to Fed. R. Civ. P. 12(c) and Civ. L.R. 7.

**INTRODUCTION**

This dispute involves allegations that an off-duty Racine police officer (defendant Brinelle Nabors), who was working as a security officer at Park High School in Racine, used excessive force in apprehending a minor student (the plaintiff, Conrad Cottingham, Jr.), who was believed to be in possession of a homemade alcoholic concoction called "lean." Cottingham also claims that another officer (defendant Jerome King) stood by and failed to intervene in Officer Nabors' use of force, that Officer Nabors falsely arrested the plaintiff, and that certain policies of the City of Racine and the Racine Unified School District caused these alleged violations.

Cottingham asserted a 42 U.S.C. § 1983 claim against the School District pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Cottingham, however, did not allege any

1

actual facts to support such a claim. His complaint instead is replete with generic recitations of the legal standard and conclusory allegations made "upon information and belief." Cottingham did not and cannot not identify a single policy, practice, or custom of the School District that caused a violation of his constitutional rights. Nor can Cottingham point to any prior pattern of excessive-force misconduct by school security officers that could support a claim that the School District violated his rights by failing to adequately train the officers.

Cottingham's allegations are insufficient as a matter of law to state a claim against the School District. Therefore, the School District respectfully requests that the Court dismiss Cottingham's complaint against it with prejudice.

## STATEMENT OF FACTS ALLEGED[1]

On November 20, 2015, Cottingham was apprehended in the Park High School cafeteria for possessing a plastic bottle of a reddish purple liquid that was believed by certain school employees to be an alcoholic substance. (Doc. No.1: Compl. at ¶¶ 10-14). Cottingham alleges that one of the officers involved in the incident (who were off duty but working as school security at the time) used excessive force in apprehending Cottingham, and that the other officer did not intervene. (*Id*. at ¶¶ 56-66). Cottingham alleges that Officer Nabors slammed him to the floor, choked him, handled him roughly, punched him in the face, and slammed him into a wall of lockers. (*Id.* at ¶¶ 16, 19, 20). Cottingham further alleges that Officer King, who was present during Officer Nabors' alleged actions, failed to step in to prevent Officer Nabors' use of force. (*Id.* at ¶ 21).

Based on the above incident, Cottingham filed a 42 U.S.C. § 1983 action against Officers King and Nabors, the City of Racine, and the School District. Cottingham alleged a claim of excessive force against Officer Nabors (Claim 1); a claim against Officer King of failure to

---

[1] The School District assumes the truth of the allegations only for purposes of this motion, as required by Rule 12(c).

intervene to stop excessive force (Claim 2); a claim of false arrest against Officer Nabors (Claim 3); and a § 1983 claim under *Monell* against the City (Claim 4).

Cottingham's final claim was a conclusory *Monell* claim against the School District (Claim 5). Lacking any factual basis to support a claim against the School District, Cottingham made each one of his allegations "upon information and belief." The plaintiff broadly alleged that, "upon information and belief," the officers' conduct comported with some unidentified "written or unwritten policies, practices, and/or customs regarding investigating and responding to allegations of student misbehavior, use of force against students, corporal punishment, and disciplining students." (*Id.* at ¶¶ 89-90). The plaintiff further alleged, "upon information and belief," that the School District failed to adequately train or supervise the officers, and that these acts or omissions violated his constitutional rights. (*Id.* at ¶¶ 91-92).

Cottingham did not actually identify any School District policy, practice, or custom. Cottingham also did not allege any facts that would explain why the School District should have known that it needed to provide training to fully trained police officers in order for the officers to understand the appropriate amount of force to use to apprehend students.

## ARGUMENT

### I. Legal Standard Governing a Rule 12(c) Motion for Judgment on the Pleadings

A party may move for judgment on the pleadings after the complaint and answer have been filed. *See* Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is subject to the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Thus, in considering a motion for judgment on the pleadings, a court must view the allegations in the light most favorable to the plaintiff but "need not…give weight to unsupported conclusions of law."

3

*Id.* "[C]ourts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

In order to state claim for relief, the plaintiff must describe the claim in enough detail to give defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). To that end, a plaintiff's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A plaintiff's claim should be dismissed if he or she fails to state a claim for relief under these standards. *Id.*

These basic pleading standards apply to *Monell* claims. *Hoskin v. City of Milwaukee,* 994 F. Supp. 2d 972, 978 (E.D. Wis. 2014). Merely reciting the elements of a *Monell* claim, then, is not good enough to state a claim. *Brooks,* 578 F.3d at 582 (concluding that the plaintiff's "formulaic recitation of the cause of action" was insufficient to state a *Monell* claim); *McCauley*, 671 F.3d at 618 ("legal elements of the various claims…are not factual allegations and as such contribute nothing to the plausibility analysis under *Twombly/Iqbal*."). In order to survive dismissal, a plaintiff must allege actual facts that plausibly support a claim for relief. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). The plaintiff did not do so here.

## II. Judgment Should Be Entered In Favor Of The School District Because Cottingham Failed To Allege Facts To Support A *Monell* Claim Against The School District

### A. The Legal Standard Governing *Monell* Claims

Under *Monell v. Department of Social Services*, 436 U.S.658 (1978), a municipality "may be held liable for violations of civil rights, so long as the municipality has adopted or otherwise promulgated a policy or custom that violated the plaintiff's constitutional rights."

4

*Hoskin*, 994 F. Supp. 2d at 976 (citing *Monell*, 436 U.S. at 690). In order to state a *Monell* claim against a municipality, "the plaintiff must plead factual content that would allow the Court to draw a reasonable inference that: (1) he has suffered the deprivation of a constitutional right; and (2) that an official custom or policy of the [municipality] caused that deprivation." *Id.* at 978 (citing *McCauley*, 671 F.3d at 616; *Monell,* 436 U.S. at 694-95).

It is important to note that municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Rather, "'[m]isbehaving employees are responsible for their own conduct,' and 'units of local government are only responsible for their policies, rather than misconduct by their workers.'" *Hoskin*, 994 F. Supp. 2d at 979 (citing *Lewis v. City of Chicago,* 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint,* 482 F.3d 897, 904 (7th Cir. 2007))).

### B. Cottingham Has Not Pled Any Facts Related to a Practice or Policy of the School District

#### 1. Cottingham Did Not Allege Any Facts to Support a Written Policy or Unwritten but Widespread Practice or Custom.

There are three ways in which a plaintiff can establish a "custom or policy" that violated his rights: through "(1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with final policymaking authority." *Hoskin,* 994 F. Supp. 2d at 979 (citations and quotations omitted). Cottingham did not allege that a violation was caused by a "decision by a municipal agent with final policymaking authority," so this motion addresses only the first two means of establishing an official policy.

The sum total of Cottingham's allegations with regard to the School District's purported policies are as follows:

> 89. Upon information and belief, when Nabors used excessive force against Cottingham and when he arrested Cottingham without probable cause, Nabors acted within the School District's written or unwritten policies,

5

> practices, and/or customs regarding investigating and responding to allegations of student misbehavior, use of force against students, corporal punishment, and disciplining students.
>
> 90. Upon information and belief, when King failed to intervene to prevent Nabors from using excessive force against Cottingham, King acted within the School District's written or unwritten policies, practices, and/or customs regarding investigating and responding to allegations of student misbehavior, use of force against students, corporal punishment, and disciplining students.

(Compl. ¶¶ 89-90). Nowhere in his Complaint did Cottingham identify or describe any supposed policy, practice, or custom. The plaintiff did not cite any actual written policy of the School District, even though the School District's policies and regulations are publicly available. The only reasonable conclusion that one can draw from this is that Cottingham's mandatory, pre-suit factual investigation (*see* Fed. R. Civ. P. 11(b)) did not uncover any constitutionally infirm written policies.[2] Merely proclaiming that the officers' actions were "within" some unidentified written policy does not state a plausible claim that the School District, in fact, had such a policy. *See Brooks,* 578 F.3d at 581.

Because he has alleged no written policy, Cottingham must rely on his similarly conclusory allegations of some supposed unwritten policy, practice, or custom. Here, again, Cottingham's allegations fall short.

In the absence of a written policy, a "widespread practice" or custom can be recognized as an official policy under *Monell* if, "although unwritten, [the practice] is so entrenched and well-known as to carry the force of policy." *Hahn v. Walsh*, 762 F.3d 617, 640 (7th Cir. 2014) (quoting *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012)). Because the practice must be "widespread," however, a plaintiff cannot establish the existence of an

---

[2] Unlike many cases, where necessary evidence to support a plaintiff's claim may be uniquely in the possession of a defendant at the time the plaintiff files a complaint, the School District is subject to Wisconsin Open Records law. As such, the plaintiff had a unique opportunity to discover any facts he needed to support his claim before filing his complaint.

6

unwritten policy based solely on the incident in question. *See Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006) (explaining that a "widespread practice" claim focuses "on the application of the policy to many different individuals."). To the contrary, the plaintiff must show several prior instances of misconduct before one can reasonably infer that the misconduct represents an "entrenched" policy: in this regard, establishing a widespread-practice claim requires proof of "more than one instance, or even three." *Palka v. City of Chicago*, 662 F.3d 428, 435 (7th Cir. 2011) (quoting *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010)); *see also Calusinski v. Kruger*, 24 F.3d 931, 936 (7th Cir. 1994).

This is necessarily so because "[h]olding a municipality liable for its official policies or custom and usage is predicated on the theory that it knew or should have known about the alleged constitutional incident on the day of the incident." *Calusinski*, 24 F.3d at 936. To that end, in order "[t]o state a widespread practice claim under *Monell*, the plaintiff must allege 'facts tending to show that the [School District] policymakers were aware of the behavior of officers, or that the activity was so persistent and widespread that [School District] policymakers should have known about the behavior.'" *Hoskin,* 994 F. Supp. 2d at 980 (quoting *Latuszkin v. City of Chi.*, 250 F.3d 502, 505 (7th Cir. 2001)). "At the pleading stage, then, a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill*, 850 F.3d at 344. That requires the plaintiff to allege other examples of employees "taking actions similar to those complained of." *Id.*

Cottingham did not allege any such facts. Cottingham did not allege that the School District was aware of any (let alone several) prior instances where its security officers allegedly used excessive force against students, failed to intervene in the use of excessive force, or falsely arrested students within the School District. Nor did Cottingham "plausibly allege that such

7

examples exist." *See id.* (affirming the district court's granting of defendants' motion for judgment on the pleadings).

Merely describing the officers' conduct and then tacking on boilerplate allegations that trace the requirements of a *Monell* claim is not sufficient to state a claim. In *Gallagher v. O'Connor*, the Seventh Circuit recently affirmed the dismissal of a *Monell* claim where the plaintiff had failed to allege any facts that would plausibly have shown the existence of a municipal policy that caused his injury. *Gallagher*, No. 16-1594, 2016 U.S. App. LEXIS 19575, at *9 (7th Cir. Oct. 31, 2016) (unpublished). The court of appeals concluded that the plaintiff's complaint was legally deficient because it "merely describe[d] the factual circumstances of [the] arrest and tack[ed] on boilerplate allegations that trace[d] the legal requirements of a *Monell* claim. [Plaintiff did] not allege that a practice of using excessive force [was] common to the rest of the Village's police force or that excessive force [had] been used on other occasions in accordance with the supposed policy." *Id*. at *10.

Cottingham's allegations here are similarly conclusory and thus do not state a plausible claim for relief. *See Gill*, 850 F.3d at 344; *Brown v. Milwaukee Cnty. Sheriff's Dep't*, No. 14-cv-1066-pp, 2015 U.S. Dist. LEXIS 83278, at *3-4 (E.D. Wis. June 26, 2015) (granting motion to dismiss where the plaintiff failed to describe a policy or custom or failure to train or supervise).

Before filing a claim, a party must have an actual factual basis to justify that claim; he or she may not first file the complaint and then initiate a fishing expedition to try to find one. Fed. R. Civ. P. 11(b); *see also Taylor v. City of Chi.*, No. 96 C 1797, 1997 U.S. Dist. LEXIS 1020, at *8 (N.D. Ill. Jan. 31, 1997) (dismissing *Monell* claim for failure to allege facts to support claim of unconstitutional city policy). "[W]here, upon reasonable inquiry, plaintiffs have no reason to conclude the existence of an unconstitutional municipal policy, they should not use the discovery

8

Case 2:16-cv-01560-JPS   Filed 05/12/17   Page 8 of 12   Document 40

examples exist." *See id.* (affirming the district court's granting of defendants' motion for judgment on the pleadings).

Merely describing the officers' conduct and then tacking on boilerplate allegations that trace the requirements of a *Monell* claim is not sufficient to state a claim. In *Gallagher v. O'Connor*, the Seventh Circuit recently affirmed the dismissal of a *Monell* claim where the plaintiff had failed to allege any facts that would plausibly have shown the existence of a municipal policy that caused his injury. *Gallagher*, No. 16-1594, 2016 U.S. App. LEXIS 19575, at *9 (7th Cir. Oct. 31, 2016) (unpublished). The court of appeals concluded that the plaintiff's complaint was legally deficient because it "merely describe[d] the factual circumstances of [the] arrest and tack[ed] on boilerplate allegations that trace[d] the legal requirements of a *Monell* claim. [Plaintiff did] not allege that a practice of using excessive force [was] common to the rest of the Village's police force or that excessive force [had] been used on other occasions in accordance with the supposed policy." *Id*. at *10.

Cottingham's allegations here are similarly conclusory and thus do not state a plausible claim for relief. *See Gill*, 850 F.3d at 344; *Brown v. Milwaukee Cnty. Sheriff's Dep't*, No. 14-cv-1066-pp, 2015 U.S. Dist. LEXIS 83278, at *3-4 (E.D. Wis. June 26, 2015) (granting motion to dismiss where the plaintiff failed to describe a policy or custom or failure to train or supervise).

Before filing a claim, a party must have an actual factual basis to justify that claim; he or she may not first file the complaint and then initiate a fishing expedition to try to find one. Fed. R. Civ. P. 11(b); *see also Taylor v. City of Chi.*, No. 96 C 1797, 1997 U.S. Dist. LEXIS 1020, at *8 (N.D. Ill. Jan. 31, 1997) (dismissing *Monell* claim for failure to allege facts to support claim of unconstitutional city policy). "[W]here, upon reasonable inquiry, plaintiffs have no reason to conclude the existence of an unconstitutional municipal policy, they should not use the discovery

process as a fishing expedition during which they cast their nets of broad and conclusory allegations in the hopes of catching a trace of such a policy." *Id.* Yet that is precisely what Cottingham is doing here.

Cottingham should not be permitted to pursue (and conduct extensive discovery on) a canned claim of an express policy that had no factual support at the time of filing. Cottingham's claim premised on some unidentified express policy of the School District must be dismissed.

### 2. Cottingham Did Not Allege Any Facts to Support a Claim Based on an Alleged Failure to Train or Supervise

Cottingham also did not allege any facts to support a claim that the School District failed to adequately train or supervise the officers. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A claim based on inadequate training can serve as the basis for a *Monell* claim only in "limited circumstances," namely, where the alleged facts demonstrate a "deliberate indifference" to a citizen's rights. *City of Canton v. Harris*, 489 U.S. 378, 387, 390 (1989).

> Deliberate indifference may be shown in one of two ways. First, a municipality shows deliberate indifference when it fails to train its employees to handle a recurring situation that presents an obvious potential for a constitutional violation and this failure to train results in a constitutional violation. Second, a municipality shows deliberate indifference if it fails to provide further training after learning of a pattern of constitutional violations by the police.

*Dunn v. City of Elgin*, 347 F.3d 641, 646 (7th Cir. 2003) (citations omitted). To show deliberate indifference, a plaintiff must allege that the municipality "was aware that unless further training was given the officers would undermine the constitutional rights of others." *Id.* In other words, a plaintiff must plead and prove that the municipality knew of a specific "recurring situation" or "pattern of constitutional violations" by its employees and failed to do anything about it. *Id.*

Again, Cottingham's boilerplate allegations do not meet required pleading standards. Cottingham's allegations supporting his failure-to-train claim consist solely of the following:

9

91. Upon information and belief, defendant School District failed to adequately train and supervise its security officers working in its secondary schools, including Nabors and King, regarding interacting with students, investigating and responding to allegations of student misbehavior, use of force against students, corporal punishment, and disciplining students.

92. Upon information and belief, in light of the foreseeable consequences to students of failing to adequately train and supervise its school security officers as described in paragraph 91, defendant School District was deliberately indifferent to the rights of Cottingham and other students in the School District's secondary schools by failing to adequately train and supervise its school security officers, including Nabors and King.

(Compl. ¶¶ 91-92).

Nowhere in the Complaint is any assertion that the incident alleged was consistent with a pattern of past abuses by security officers at the School District, let alone that the School District was aware of such a pattern. Cottingham's theory seems to be: because the incident was bad, it was "foreseeable"; and therefore the School District is liable. But mere "foreseeability" is not the standard. To the extent it plays any role in the analysis, foreseeability must have its foundation in an actual "aware[ness]" of a prior "pattern of constitutional violations" or "recurring situation." *See Dunn*, 347 F.3d at 646. No allegations here support such a claim.

Finally, even if one were to ignore the fact that Cottingham failed to allege any knowledge by the School District of a recurring problem, Cottingham's causation premise simply is not tenable. It is not plausible to infer that the School District's failure to train Officers King and Nabors caused the alleged constitutional violations because, absent such training from the *School District*, there would be an "obvious potential" that these fully trained *police officers* would not know how to use appropriate force to apprehend a student.

While couched as a *Monell* claim, Cottingham's claim actually is an improper attempt to hold the School District vicariously liable based on a single incident. As noted above, however, municipalities cannot be held vicariously liable on § 1983 claims. *Connick*, 563 U.S. at 560.

10

Instead, there must be a direct causal link between the alleged unconstitutional deprivation and the municipal policy or custom at issue. *Board of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Cottingham has not alleged a plausible causal link.

Failure-to-train claims are "tenuous" to begin with. Without any actual factual allegations that would plausibly implicate the School District, Cottingham's is futile.

### 3. The Only Actual Factual Allegations in Cottingham's Claim Against the School District Are Not Actionable.

In Cottingham's claim against the School District, only four paragraphs contain factual content against the School District. (Compl. ¶¶ 85-88). But none of those four paragraphs can form the basis of a claim against the School District because each one describes events that occurred *after* the alleged constitutional violation. What is more, the allegations appear to be wholly extraneous to his claim in that Cottingham does not allege that any of those facts caused the alleged constitutional violations. (*See id.* ¶¶ 93-94).

Cottingham alleges that (1) upon information and belief, the School District did not investigate a complaint into the incident that Cottingham's parents made in December 2015 (*Id.* ¶ 85); (2) upon information and belief, the School District did not discipline Nabors or King for their respective roles in the incident (*Id.* ¶¶ 86-87); and (3) upon information and belief, the School District failed to preserve evidence related to the incident (*Id.* ¶ 88).

The School District's *handling* of the incident in question cannot support a claim that its policies caused the alleged constitutional deprivation that occurred on November 20, 2015, because all such conduct occurred after the incident. Cottingham does not allege otherwise. "[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates . . . .'" *Connick*, 563 U.S. at 63, n.7 (quoting *Canton*, 489 U.S. at 395 (O'Connor, J., concurring in part

11

and dissenting in part)); *see also Calusinski*, 24 F.3d at 936; *Pullen v. House*, 88 F. Supp. 3d 927, 947-48 (W.D. Wis. 2015) (concluding that the fact that "defendants were not disciplined by the city for their use of force against plaintiff . . . cannot be used to impose liability on the city" in light of *Connick*).

## CONCLUSION

For all of the foregoing reasons, Racine Unified School District respectfully requests that this Court enter an order granting judgment on the pleadings in its favor and dismiss the Complaint against it with prejudice.

Dated this 12th day of May, 2017.

**MICHAEL BEST & FRIEDRICH LLP**

By: /s/ *Aaron H. Kastens*
Joseph L. Olson, SBN 1046162
Aaron H. Kastens, SBN 1045209
100 East Wisconsin Avenue, Suite 3300
Milwaukee, WI 53202-4108
P: 414.271.6560
F: 414.277.0656
jlolson@michaelbest.com
ahkastens@michaelbest.com

Attorneys for Defendant,
Racine Unified School District